UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

CAPELLI TRADE, LLC,
a Florida limited liability company,

        Plaintiff,

        vs.

EL SALES CORP. d/b/a ROYALE PROFESSIONAL
BEAUTY PRODUCTS, a Florida corporation, and
SHAHAR SHABAT, an individual,

        Defendants.
_____/

## **COMPLAINT**

      Plaintiff, Capelli Trade, LLC d/b/a Straight Ahead Beauty ("Straight Ahead Beauty" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, El Sales Corp. d/b/a Royale Professional Beauty Products ("El Sales") and Shahar Shabat ("Shabat") (collectively "Defendants") and alleges as follows:

## **THE PARTIES**

      1.    Plaintiff Capelli Trade, LLC, formerly known as Straight Ahead Beauty, LLC, and now doing business as Straight Ahead Beauty, is a limited liability company duly organized and existing under the laws of the State of Florida with a principal place of business at 3933 Pembroke Rd., Hollywood, Florida 33021.

      2.    Defendant EL Sales is a Florida corporation with its headquarters located at 5111 W. Knox St., Tampa, Florida 33634. EL Sales has previously and is currently making, using, advertising, selling, offering for sale, and selling various types of hair styling devices and products that infringe upon the Plaintiff's intellectual property and trademark rights, as alleged fully herein.

1

3.     Defendant Shabat is an owner and officer of EL Sales.  Upon information and belief, Shabat resides in Tampa, Florida.  Shabat personally participated in the unlawful conduct and infringement alleged below, and further directed, ordered, ratified, approved, and/or consented to EL Sales' tortious activity.  Upon information and belief, Shabat is the registrar, administrator, and/or owner for websites used by EL Sales to market the products at issue bearing the infringing trademarks, including but not limited to www.royaleusa.com and/or www.royale-products.com, as well as El Sales' Walmart.com, eBay, and Amazon storefronts.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338, and also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.     Defendants' wrongful conduct occurred in this State and in this District, as Defendants solicit, transact, and are doing business within the State of Florida, and Defendants' products can be purchased by Florida residents over the Internet from websites operated by Defendants and other retailers.  Accordingly, jurisdiction is proper in that:

a.     Defendants are engaged in substantial and not isolated activity within the State of Florida, within the meaning of *Fla. Stat.* §48.193(2); and/or

b.     Defendants have operated, conducted, engaged in, or carried on a business venture in this State, from which this action arises, within the meaning of *Fla. Stat.* §48.193(1)(a)(1); and/or

c.     Defendants have committed tortious acts within this State, including the infringement, and unfair trade practices set forth herein, within the meaning of *Fla. Stat.* §48.193(1)(a)(2); and/or

d.     Defendants have caused injury to the property of Plaintiff within this State,

2

namely, Plaintiff's intellectual property rights as set forth herein, arising out of acts or omissions by Defendants, and at or about the time of the injury, Defendants were engaged in solicitation or service activities within this State, within the meaning of *Fla. Stat*. §48.193(1)(a)(6).

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events or acts giving rise to the claim occurred in this District, a substantial part of the property that is the subject of the action (namely, Plaintiff's intellectual property) is situated in this District, and because the acts complained of also have been and continue to be committed in this District.  Further, Defendants solicit, transact, and are doing business within the State of Florida, and Defendants' products can be purchased by Florida residents over the Internet from websites operated by Defendants and other retailers.

## FACTUAL ALLEGATIONS

**Background of Straight Ahead Beauty, Including its Innovative Hair Care
Products, Dedicated Customer Service Department, and Lifetime
Warranty for Products Bearing the Plaintiff's Trademarks**

7.      Plaintiff's founder, Tal Gilboa, started Straight Ahead Beauty in 2010 based on two principal ideas: that style and beauty are for everyone, and can be achieved on a daily basis without a struggle.  To that end, Straight Ahead Beauty set out on its mission to revolutionize the hair tools industry, and to deliver a quality line of products using high end materials to assist clients in achieving their perfect and customized style.

8.      Since at least as early as 2016, Straight Ahead Beauty adopted and used its well-known and distinctive STRAIGHT AHEAD trademark (hereinafter the "STRAIGHT AHEAD Mark") in connection with hair care products, and is the owner of all rights, title, and interest in the STRAIGHT AHEAD Mark.

9.      Since at least as early as 2017, Plaintiff also adopted and used its distinctive and well-known SA trademark



(hereinafter the "SA Mark") in connection with hair care products, and is the owner of all rights, title, and interest in the SA Mark.  Plaintiff owns a registration for the SA Mark, U.S. Registration 5,527,708 (hereinafter "Plaintiff's Trademark Registration").  A printout of the Plaintiff's Trademark Registration is attached hereto as **Exhibit A**.

10.      Since its inception, Straight Ahead Beauty has consistently excelled in the industry, and has used its STRAIGHT AHEAD Mark and SA Mark (collectively the "Plaintiff's Marks") nationwide in U.S. commerce.

11.      Straight Ahead Beauty is recognized as one of the premier manufacturers and distributors of hair related products bearing the STRAIGHT AHEAD Mark and SA Mark, including but not limited to: flat irons, blow dryers, styling wands, straightening brushes, styling sets, and other hair care products. Indeed, and as recognized on www.instraight.com, Straight Ahead Beauty is "known to manufacture some of the most high-end hairstyling tools."

12.      In addition to Straight Ahead Beauty's reputation of selling high-end and quality hair care products, another key selling point is the Plaintiff's dedicated customer service department and lifetime warranty for its goods.

13.      As shown on www.straightaheadbeauty.com/lifetime_warranty, once a customer purchases a Straight Ahead Beauty product, the customer is able to register that purchased product on the Plaintiff's website, which immediately activates a lifetime warranty (in the unlikely event that the product ever breaks or otherwise malfunctions):



14.     Since long prior to the acts of Defendants complained of herein, Straight Ahead Beauty has expended much money, time, and effort in advertising, promoting, marketing, and selling the products bearing the Plaintiff's STRAIGHT AHEAD Mark and SA Mark.  Plaintiff's Marks have been and are now associated in the public mind exclusively with Plaintiff in the field of hair styling tools and related hair-care products.

15.     Since long prior to the acts of Defendants complained of herein, the Plaintiff's Marks have been readily recognizable by the public as associated exclusively with Plaintiff by virtue of years of continuous use, and have achieved a secondary meaning to the consuming public.

16.     The Plaintiff's Marks have been in continuous use in U.S. commerce since their adoption and first use in U.S. commerce.

**Defendants' Infringing Activity**

17.    Long subsequent to Plaintiff's adoption and use of the Plaintiff's Marks, Defendants commenced selling, advertising and marketing competing hair styling tools and related hair care products, designated with the Plaintiff's Marks (the "Infringing Marks").  Examples of Defendants' products utilizing the Infringing Marks – which misappropriate both the Plaintiff's STRAIGHT AHEAD Mark and SA Mark – are set forth below:



18.    Defendants' Infringing Marks are confusingly similar to Plaintiff's Marks because: **(a)** the Infringing Marks contain the identical "SA" trademark which is being used in connection with hair styling tools [as shown in "Example A" immediately above];  **(b)** the Infringing Marks contain the term "STR8 AHEAD" which is being used in connection with similar hair styling tools [as shown in "Example B" immediately above], and which is similar in sound, sight, and meaning when compared with Plaintiff's STRAIGHT AHEAD Mark; **(c)** the Infringing Marks contain the identical "STRAIGHT AHEAD" trademark which is being used in connection with hair styling tools [as shown in "Example C" immediately above]; **(d)** the Plaintiff's products and the Defendants' products are competing hair styling tools and hair related goods which are both

6

sold online; **(e)** the channels of trade are the same or highly similar; **(f)** the advertising channels are the same or highly similar; and **(g)** Defendants had a bad faith intent to appropriate Plaintiff's goodwill and cause confusion with Plaintiff's Marks when Defendants adopted the Infringing Marks. Additional bases of likelihood of confusion between the parties' marks are expected to be revealed through discovery.

19.    Defendants' bad faith intent is evident from Defendants' blatant copying of Plaintiff's distinctive STRAIGHT AHEAD Mark and label as shown in "Example C" in paragraph 18 above.

20.    As evidenced by the Defendants' online sales set forth immediately below (including but not limited to Amazon, eBay, and Walmart), the Defendants have enjoyed and continue to enjoy financial gain and profit from the sale and marketing of goods that utilize the Infringing Marks.

*Defendants' "Beauty Certain" Amazon Store*

21.    Seizing the opportunity to trade on Straight Ahead Beauty's valuable reputation and goodwill, strong clientele base, and reoccurring stream of customers – fruits the Plaintiff has acquired through years of tireless effort and labor, product research and development, and significant expense – Defendants opened an Amazon storefront under the name "Beauty Certain," which is associated and linked to Defendant EL Sales' corporate address, as shown below:



22.     Vying to compete for the exact same customers as Plaintiff, and seeking to trade off of Plaintiff's STRAIGHT AHEAD Mark and SA Mark, Defendants sell similar hair straightening products on Amazon which bear the Infringing Marks. Examples of such infringement are shown below:



23.    Defendants are not only infringing upon Plaintiff's Marks in the actual title of various Amazon listings, but also in the "description" section of those listings as well:



*Defendants' "Beauty Certain" eBay Store,*
*Listed Under the eBay UserID "alwei_27"*

24.    Defendants have also advertised, marketed, offered for sale, and sold products bearing the Infringing Marks online via eBay.

25.    As another means to continue their willful infringement, Defendants have operated, and still are operating an online eBay marketplace under the storefront "Beauty Certain," which is listed under eBay UserID "alwei_27."  As shown below, the Defendants' products sold via eBay are shipped from Longboat Key, Florida, not far from Defendant El Sales' corporate address:

9



26.     Defendants' product listings on eBay intentionally use and incorporate Plaintiff's

SA Mark in connection with Defendants' competing hair straighteners:



27.     In an effort to misdirect consumers from the Plaintiff's products to the Defendants' competing hair products, Defendants are also using the infringing "STRAIGHT AHEAD" mark in their product listings.   This unlawful tactic is employed so as to mislead consumers into believing there is an association, sponsorship, or affiliation between the Plaintiff and the Defendants, when in fact there is not.   One such example is found immediately below:



*Defendants' Infringement and Passing Off Through*
*Their Walmart.com "Beauty Certain" Storefront*

28.     Defendants have also advertised, marketed, offered for sale, and sold products bearing the Infringing Marks online via Walmart under the "Beauty Certain" storefront.

29.     The image below reflects the search results after a consumer: **(a)** logs onto www.walmart.com; **(b)** searches for the Plaintiff's "Straight Ahead" hot hair brush; and then **(c)** filters the results by "brand," selecting products from "Straight Head."   As reflected in the

following image, Defendants are willfully passing off their inferior products as goods that are being advertised, offered for sale, and sold by the Plaintiff, when in fact they are not:



**[remainder of page left intentionally blank]**

30.     After the user clicks on one of the Defendants' misrepresented products, the user is once again presented with the same false information, namely, that the "Brand" and the "Manufacturer" of the hair product is STRAIGHT AHEAD:



31.     What is more, the Defendants' products being misrepresented and passed off as the Plaintiff's products are not only inferior, but also do not come with the same customer service and product warranties that consumers rely upon.

32.     For example, and upon information and belief, the Defendants do not have a legitimate customer service department, and also explicitly state on their Walmart.com storefront that "[a]ll sales are final."



33.     With respect to product warranties, and upon information and belief, Defendants operate a "bait and switch" tactic.  More specifically, and although allegedly promising a "lifetime warranty," Defendants in fact do not provide a lifetime warranty for their inferior goods; rather, Defendants' purported warranty is limited to only five (5) years, and customers have to pay an additional charge for this warranty, which is not disclosed from the outset.  Examples of Defendant's "bait and switch" tactic is below, which includes a consumer's statement that the Defendant is violating Florida's prohibition of committing unfair and deceptive trade practices:



34.     By falsely advertising that Defendants offer a "warranty" (when in fact they do not, or only offer a warranty in exchange for additional payment), coupled with Defendants' use of the Infringing Marks, consumers are likely to be misled and confused about the Defendants' inferior and infringing products.

35.     Defendants' misleading and false advertisements have deceived, or have the tendency to deceive, the intended audience and consuming public about matters that are material to those buyers' purchasing decisions.  The foregoing false and misleading advertisements were also intended to harm Plaintiff's interests by seeking to persuade and misdirect customers and potential customers of Plaintiff's products not to buy Plaintiff's products and instead to buy Defendants' products.

15

36.     Consumers are also likely to be confused about the Defendants' lack of customer service and bait and switch warranty, and misled into believing that the deceiving "warranty" comes from or is affiliated with Straight Ahead Beauty (when it is not).

37.     As displayed at www.straightaheadbeauty.com/lifetime_warranty/, Plaintiff has a legitimate customer service department and its "offices are open Monday – Friday from 10:00 a.m. – 5:00 p.m."  Additionally, customers can reach the Plaintiff at 786.226.9076, or via email at cs@straightaheadbeauty.com.  Furthermore, Plaintiff provides its customers with a genuine *lifetime warranty* on Plaintiff's hair products.

**Irreparable Harm and Other Injury to Plaintiff, Including Diverted Sales, and the Harm to the Public as a Result of the Defendants' Wrongful Acts**

38.     As a result of Defendants' wrongful campaign of deception addressed herein, Defendants have induced consumers into purchasing the inferior products through false advertising, false designation of origin, and trademark infringement, which in turn has diverted sales from Plaintiff's superior and high-quality hair products.

39.     Defendants' actions have not only damaged Plaintiff's brand, but have also induced consumers to purchase the Defendants' inferior products, when they would have otherwise bought the Plaintiff's competing hair products.  Defendants' intentional wrongdoing has increased their sales, and in turn has decreased sales of the Plaintiff's goods.

40.     Upon information and belief, because the cost to manufacture, advertise, offer for sale, and ultimately sell the Defendants' inferior products is far less than the cost to manufacture, advertise, offer for sale, and ultimately sell the Plaintiff's competing goods, Defendants' false and misleading advertisements and infringement has allowed Defendants to reap substantial windfalls.

41.    The foreseeable and consequential result of Defendants' misconduct and false advertising has been to cause confusion, deception and mistaken purchases in the hair products industry.

42.    Defendants' false advertising and deceptive trade practices have caused, and will continue to cause damage to Plaintiff's goodwill and reputation.  Among other things, individuals who purchase the Defendants' products falsely advertised with the Infringing Marks – which are inferior and do not come with any true lifetime warranty – may forever be disillusioned and disappointed with the quality of those products.  Such consumer skepticism may have a serious impact and threaten the long-term viability of Plaintiff's brand.

43.    Defendants' aforesaid acts were deliberate, willful, and intentional violations of Plaintiff's rights made for the purpose of commercial gain.  Indeed, and long prior to the acts of Defendants complained of herein, Defendants were well aware of Plaintiff's use and ownership of Plaintiff's Marks.

44.     Upon information and belief, at the time of introduction of the Infringing Marks, Defendants were well aware that Plaintiff's Marks were widely recognized and relied upon by the public and the trade as identifying Plaintiff and its goods.

45.    Notwithstanding that knowledge, and indeed by reason of such knowledge, Defendants thereafter engaged in, and it is believed will continue to engage in, a deliberate and willful scheme to trade upon and to misappropriate for itself the goodwill represented and symbolized by the Plaintiff's Marks through the marketing and sales of competing goods bearing the Infringing Marks in U.S. commerce.

46.    The acts of Defendants complained of herein constitute willful and intentional infringement, are in total disregard of Plaintiff's rights, and were commenced and it is believed

will continue in spite of Defendants' knowledge that their use of the Infringing Marks is in direct contravention of Plaintiff's rights.

47.     Defendants' aforesaid use of the Infringing Marks is designed and is calculated to and is likely to cause confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Defendants' products and to cause them to falsely believe that said products are the products of Plaintiff, or are sponsored, licensed, authorized, or approved by Plaintiff, all to the detriment of Plaintiff, the trade, and the public.

48.     The use by Defendants of the Infringing Marks is without the consent, license, or permission of Plaintiff.

49.     Plaintiff has been damaged by Defendants' acts of infringement.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. §1114(1)

50.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 49 as if fully set forth herein.

51.     With full knowledge and awareness of Plaintiff's ownership and prior use of Plaintiff's SA Mark and federal Trademark Registration, Defendant has willfully used, is using, and will continue to use the Infringing Marks on identical or highly related goods for which Plaintiff's Trademark Registration issued, in a manner that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive.

52.     Defendants' acts constitute infringement, use of a confusingly similar mark, and use of a spurious mark which is identical with, or substantially indistinguishable from, Plaintiff's SA Mark, in violation of and pursuant to 15 U.S.C. §1114.

53.     Defendants' acts have harmed Plaintiff's reputation, damaged Plaintiff's goodwill, and upon information and belief, have and will continue to divert sales from Plaintiff, and create

the impression that Plaintiff is an infringer when in fact Defendants are the infringers.

54.     Defendants' aforesaid acts have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

55.     Plaintiff has no adequate remedy at law.

<u>**COUNT II**</u>
**FEDERAL COMMON LAW TRADEMARK**
**INFRINGEMENT AND UNFAIR COMPETITION**

56.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 49 as if fully set forth herein.

57.     Defendants' aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of the Plaintiff's common law rights in and to the STRAIGHT AHEAD Mark and the SA Mark.

58.     Plaintiff owns and enjoys common law trademark rights in the STRAIGHT AHEAD Mark and SA Mark in conjunction with hair-related products (including but not limited to flat irons, styling irons, hair dryers, curling irons, brushes, styling tools, and combs), which rights are superior to any rights that Defendants may claim in and to said trademark.

59.     The sale by Defendants of hair-related products bearing the Infringing Marks (including but not limited to "STR8 Ahead" "Straight Ahead," and "SA") is likely to cause and has caused confusion as to the source of the Defendants' hair related products, in that purchasers thereof will be likely to associate or have associated such products as originating with Plaintiff, all to the detriment of the Plaintiff.

60.     Defendants' acts have harmed Plaintiff's reputation, damaged Plaintiff's goodwill, and upon information and belief, have diverted sales from Plaintiff and create the impression that

Plaintiff is an infringer when in fact Defendants are the infringers.

61.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

62.     Plaintiff has no adequate remedy at law.

## COUNT III
## FALSE DESIGNATION OF ORIGIN, AND PASSING OFF
## IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. §1125(a)

63.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 49 as if fully set forth herein.

64.     As alleged in detail above, Defendants have wrongfully passed off their inferior goods as the Plaintiff's products, and also falsely designated the origin of the Defendants' goods by, among other things: (a) advertising that the "Brand" and "Manufacturer" of Defendants' hair products is STRAIGHT AHEAD, which is false; (b) using the Plaintiff's STRAIGHT AHEAD Mark in the product listing/description of the Defendants' competing goods; and (c) using the Plaintiff's registered SA Mark in connection with the Defendants' competing hair products, an example of which is shown below:



| **Plaintiff's Registered SA Mark** | **Defendants Passing Off and Misrepresenting the Origin of Their Products** |
|---|---|

65.    Defendants' passing off and false designation has created a likelihood of consumer confusion regarding the source of the Defendants' hair products.

66.    Plaintiff has been harmed by the Defendants' passing off and false designation or origin.

67.    Defendants' aforesaid acts constitute unfair competition, false designation of origin and passing off in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

68.    Defendants' acts have harmed Plaintiff's reputation, damaged Plaintiff's goodwill, and upon information and belief, have diverted sales from Plaintiff.

69.    Defendants' aforesaid acts have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

**COUNT IV**
**VIOLATION OF THE FLORIDA UNFAIR**
**AND DECEPTIVE TRADE PRACTICES ACT**
**(Fla. Stat. §501.201, et. seq.).**

70.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 49 as if fully set forth herein.

71.    Plaintiff is an "aggrieved person" and a "consumer" under the Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. §501.201, et. seq.), which provides: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

72.    Through the use of advertising in sales materials made on the Internet and elsewhere, Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices by, among other things: (a) advertising that the "Brand" and "Manufacturer" of Defendants' hair products is STRAIGHT AHEAD, which is false; (b) using the Plaintiff's STRAIGHT AHEAD Mark in the product listing/description of the Defendants' competing goods; (c) using the Plaintiff's registered SA Mark in connection with the Defendants' competing hair products; and (d) misrepresenting to consumers that "all sales are final" with respect to the products Defendants are advertising, offering for sale, and selling using Plaintiff's STRAIGHT AHEAD Mark (which is false because the Plaintiff's genuine hair products come with a lifetime warranty).

73.    The above-referenced unfair and deceptive trade practices were false and/or misleading, have deceived (or had the capacity to deceive) consumers, and have created a likelihood of confusion and misunderstanding among the consuming public.  Defendants have therefore engaged in deceptive trade practices in violation of the Florida Unfair and Deceptive

Trade Practices Act (Fla. Stat. §501.201, et. seq.) by disparaging the goods, services, or business of Plaintiff through false and misleading representations of fact.

74.     As a consequence of their unlawful campaign of deception, Defendants have wrongfully induced consumers into purchasing the Defendants' goods, and in turn have diverted sales from the Plaintiff.

75.     Defendants' misconduct has misled and injured consumers, and is likely to continue to mislead and injure consumers that are acting reasonably when viewing Defendants' website, e-commerce storefronts, and related advertisements, and has affected and will continue to affect those consumers' purchasing decisions.   As a result, Defendants' misconduct constitutes a deceptive act or practice in violation of Florida law.

76.     As a consequence of Defendants' deceptive acts or practices alleged herein, Plaintiff has suffered, and will continue to suffer, an ascertainable loss of money or other damages (including but not limited to lost sales which would have made but for Defendants' deceptive trade practices), and Plaintiff is entitled to recover actual damages under the Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. §501.201, et. seq.).   Such actual damages include, without limitation, the difference of market value of the hair product which was sold by the Defendants to the consumer, and the market value of the Plaintiff's hair product which should have been sold by the Plaintiff to the consumer (but for Defendants' improper conduct as alleged herein).

77.     Further, and because Defendants have acted with a willful, reckless and/or wanton indifference to Plaintiff and Plaintiff's rights, Defendants are also liable for punitive damages pursuant to the Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. §501.201, et. seq.).

78.     Under the Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. §501.201,

et. seq.), Plaintiff is entitled to recover its costs and reasonable attorneys' fees incurred in prosecuting this action, and is further entitled to the entry of a preliminary and permanent injunction enjoining Defendants from their unlawful acts described herein.

**COUNT V**
**TRADEMARK INFRINGEMENT UNDER**
**FLORIDA COMMON LAW**

79.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 49, as if fully set forth herein.

80.     Plaintiff owns and enjoys common law trademark rights in STRAIGHT AHEAD Mark and the SA Mark in Florida in conjunction with hair-related products (including but not limited to flat irons, styling irons, hair dryers, curling irons, brushes, styling tools, and combs), which rights are superior to any rights that Defendants may claim in and to said trademarks.

81.     Defendants have used, in connection with the sale of goods and services, terms or names that are false and misleading and likely to cause confusion or cause mistake or deception as to the affiliation, connection or association of Defendants with Plaintiff as to the origin, sponsorship or approval of its goods, services, or commercial activities in violation of common law.

82.     The sale by Defendants of hair-related products bearing the Infringing Marks (including but not limited to "STR8 Ahead," "Straight Ahead," and "SA") is likely to cause and has caused confusion as to the source of the Defendants' hair related products, in that purchasers thereof will be likely to associate or have associated such products as originating with Plaintiff, all to the detriment of the Plaintiff.

83.     Defendants' acts have harmed or will harm Plaintiff's reputation, have damaged or will damage Plaintiff's goodwill, have diverted or will divert sales from Plaintiff, and create the impression that Plaintiff is an infringer when in fact Defendants are the infringer.

84.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

85.     Defendants' aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Plaintiff's trademarks, and such misconduct is unjustly enriching

the Defendants, all in violation of Plaintiff's rights at common law and under the law of the State of Florida.

86.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT VI
## UNFAIR COMPETITION UNDER FLORIDA COMMON LAW

87.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 49, as if fully set forth herein.

88.    The Plaintiff first adopted and used Plaintiff's trademarks in its markets or trade areas, as a means of establishing good will and reputation and to identify particular goods and services rendered or offered by the Plaintiff and to distinguish them from similar goods and services rendered or offered by others.

89.    Through its association with such goods and services, the Plaintiff's trademarks have, by actual usage, served to identify the Plaintiff as the source of the goods and services.

90.    The Defendants have commenced the use of identical or confusingly similar trademarks, to identify similar goods and services rendered by them in competition with Plaintiff, and in the same trade areas in which the Plaintiff has already established its trademarks.

91.    As a consequence of the Defendants' actions, customer confusion of source or as to the sponsorship of the goods and services offered by the Defendants is likely.

92.    Defendants' aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Plaintiff's trademarks, and such misconduct is unjustly enriching the Defendants, all in violation of Plaintiff's rights at common law and under the law of the State of Florida

93.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

## AGAINST ALL DEFENDANTS

A.    That this Court will adjudge that the Plaintiff's STRAIGHT AHEAD Mark, SA Mark, and Plaintiff's Trademark Registration have been infringed, as a direct and proximate result

of the willful acts of Defendants as set forth in this Complaint, including Defendants' use of the Infringing Marks, in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §1051 et seq., Fla. Stat. §495.151, and the common law of the State of Florida.

B.      That this Court will adjudge that Defendants have competed unfairly with Plaintiff in violation of Plaintiff's rights at common law and in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

C.      That this Court find Defendants liable for violating the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §501.201, et. seq.), and award Plaintiff all available relief, including but not limited to injunctive relief, damages, punitive damages, attorneys' fees, and costs.

D.      That Defendants, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained:

1.    From using the Plaintiff's Marks, the STRAIGHT AHEAD Mark, the SA Mark, the Infringing Marks, any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks similar thereto or likely to be confused therewith, in connection with the distribution, marketing, advertising or sale of any unauthorized goods;

2.    From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the unauthorized products of Defendants, or of any third parties, are sponsored by, authorized by, or in any way associated with Plaintiff and/or that the products of Plaintiff are inferior

to, copies of, infringing of or imitations of the products of Defendants, or that Defendants' products are the first or original such products;

3. From infringing the Plaintiff's Marks and registration;

4. From doing any other act or thing likely to cause the public or the trade to believe that there is any connection between Defendants and Plaintiff, or their respective products;

5. From falsely representing themselves or their affiliates as being connected with Plaintiff, or sponsored by or associated with Plaintiff, or engaging in any act which is likely to falsely cause the trade, retailers, and/or members of the purchasing public to believe that Defendants or their affiliates are associated with Plaintiff and/or that Plaintiff is associated with Defendants or infringing upon any mark of the Defendants in the use of Plaintiff's Marks; and

6. From affixing, applying, annexing, or using in connection with the sale of any goods or services sold by Defendants (including, without limitation, flat irons, blow dryers, styling wands, straightening brushes, styling sets, and other hair care products) any false description or representation including words or other symbols tending to falsely describe or represent such goods or services.

E.     That Defendants be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, wrappers, inventory, advertisements, internet advertising and other written or printed material in the possession or control of Defendants, or third party advertisers and retailers of Defendants' products which bear the Plaintiff's Marks or Trademark Registration or any infringement thereof, including but not limited to the Infringing Marks, and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of

the foregoing, or any trademarks similar thereto or likely to be confused therewith, alone or in combination with any other word or element, and all plates, molds, matrices, and other means from making the aforesaid items.

F.     That Defendants be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, wrappers, inventory, advertisements, internet advertising and other written or printed material in the possession or control of Defendants, or third party advertisers and retailers of Defendant's products which bear claims found by this Court to be false and/or misleading in violation of 15 U.S.C. §1125(a)(1)(B).

G.     That Defendants be directed to file with this Court and to serve upon Plaintiff within thirty (30) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs A through F above, including all subparts.

H.     That Defendants be ordered to forthwith identify to Plaintiff all active and passive participants in the acts complained of herein and supply to Plaintiff a complete list of the persons and/or entities from whom Defendants purchased, and to whom Defendants distributed and/or sold any goods, bearing any of the Plaintiff's Marks.

I.     That Plaintiff recover Defendants' profits and the damages of Plaintiff arising from Defendants' acts of trademark infringement, false designation of origin, and unfair competition, and that the Court, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, enter judgment, and that said sums be trebled as authorized pursuant to 15 U.S.C. §1117(b).

J.     That Plaintiff recover such sums as are necessary to place or compensate for corrective advertising.

K.     That Plaintiff have and recover, pursuant to the laws of the State of Florida, and

common law, in addition to its actual damages, punitive damages in an amount which the Court deems just and proper.

L.      That Plaintiff have and recover both pre-judgment and post-judgment interest on each and every damage award.

M.      That Plaintiff be entitled to injunctive relief as set forth in §34 of the Lanham Act, and that Plaintiff have and recover the remedies set forth in §§ 35(a) and 36 of the Lanham Act, 15 USC §§1117(a) and 1118.

N.      That Plaintiff have and recover its reasonable attorney fees incurred in this action, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, Florida Statutes, and as otherwise authorized.

O.      That Plaintiff have and recover its taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, and as otherwise authorized.

P.      That Plaintiff recover such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Respectfully submitted,

Dated:  December 2, 2020

s/ Jonathan Woodard
John Cyril Malloy, III
Florida Bar No. 964220
jcmalloy@malloylaw.com
Meredith Frank Mendez
Florida Bar No. 502235
mmendez@malloylaw.com
Jonathan R. Woodard
Florida Bar No. 0096553
jwoodard@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
*Attorneys for Plaintiff*

29